## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CONTINENTAL COAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 06-2122-KHV** |
| MATT CUNNINGHAM, LAURA CUNNINGHAM, ) | |
| and BOARD OF COUNTY COMMISSIONERS OF ) | |
| LINN COUNTY, KANSAS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

On April 3, 2006, Continental Coal, Inc. ("Continental") filed suit against Matt and Laura Cunningham and the Board of County Commissioners of Linn County, Kansas ("Board"). Under 42 U.S.C. § 1983, Continental alleges that by attempting to modify the hours of operation of a conditional use permit for it to mine coal on certain property in Linn County, Kansas, defendants violated Continental's rights to procedural due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution. Continental also asserts state law claims for tortious interference with contracts, business relationships and prospective business relationships, abuse of process and malicious prosecution. This matter is before the Court on the Motion to Dismiss Of Defendant Board Of County Commissioners of Linn County, Kansas (Doc. #19) filed July 14, 2006 and the Motion To Dismiss Of Defendants Matt And Laura Cunningham (Doc. #32) filed July 26, 2006. Because defendants have already filed answers, their motions are treated as ones for judgment on the pleadings under Rule 12(c). See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 n. 2 (10th Cir. 2002). For reasons stated below, the Court sustains defendants' motions in part.

### Standards For Motions For Judgment On The Pleadings Under Rule 12(c)

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6).  See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000); Mock v. T.G. & Y., 971 F.2d 522, 528 (10th Cir. 1992). A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiff.  See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987).  In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether it is entitled to offer evidence to support its claims.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Although plaintiff need not precisely state each element of its claims, it must plead minimal factual allegations on those material elements that must be proved.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

### Factual Background

Plaintiff objects that the documents attached to the Board's memorandum in support of its motion to dismiss are outside the pleadings.  See Memorandum In Opposition To Motion To Dismiss Of Defendant Board Of County Commissioners Of Linn County, Kansas (Doc. #38) filed August 18, 2006 at 40.  On a motion to dismiss, the Court may consider (1) indisputably authentic copies of documents if plaintiff referred to them in the complaint and the documents are central to the claims; and (2) facts which are subject to judicial notice.  See GFF, 130 F.3d at 1384 (if document referred to in complaint but not attached to it, and is central to plaintiff's claim, defendant may submit indisputably authentic copy to be

2

considered on motion to dismiss); Fed. R. Evid. 201(b) (judicially noticed fact must be one not subject to reasonable dispute in that it is either generally known within territorial jurisdiction of trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

The Court has considered several documents outside plaintiff's complaint which are referred to in the complaint and are central to plaintiff's claims. These include (1) the conditional use permit issued November 10, 2003; (2) a position letter from Linn County Counselor; (3) Linn County Zoning Regulations; (4) a letter from plaintiff's president to the Board; and (5) the conditional use permit issued November 18, 2005. See Exhibits 1, 3, 5-7 to Memorandum In Support Of Motion To Dismiss Of Defendant Board Of County Commissioners Of Linn County, Kansas ("Board's Memorandum") (Doc. #20) filed July 14, 2006. Plaintiff does not dispute the authenticity of the documents or deny that it referenced them in the complaint, but it argues that the complaint contained only limited allegations about the documents and did not incorporate them in their entirety. Even though plaintiff did not expressly incorporate the documents which are attached to the Board's motion, they are central to its claim and should be considered on a motion for judgment on the pleadings. See GFF Corp., 130 F.3d at 1385 (if rule were otherwise, plaintiff with deficient claim could survive motion to dismiss simply by not attaching dispositive document upon which it relied).

The Court has also considered pleadings, court orders, motions and certified transcripts of hearings from the state court case of Cunningham v. Bd. of County Comm'rs of Linn County, Kan, Case No. 03CV312 in the District Court of Linn County, Kansas. See Exhibits 2, 4, 8-12 to Board's Memorandum (Doc. #20). Those documents are subject to judicial notice. See Trusdale v. Bell, 85 Fed.

Appx. 691, 693 (10th Cir. 2003) (judicial notice of district court records concerning plaintiff's criminal conviction); Stack v. McCotter, 79 Fed. Appx. 383, 391 (10th Cir. 2003) (judicial notice of state district court docket sheet); St. Louis Baptists Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts may take notice of proceedings in other courts if proceedings have direct relation to matters at issue); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (judicial notice of transcript, pleadings, memoranda, expert reports from another case); Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (on motion to dismiss, court may take judicial notice of another court's opinion – not for the truth of the matter asserted – but for existence of opinion). Plaintiff argues that because the complaint does not refer to the transcripts of the state court hearings on February 10 and March 17, 2006, the Court should ignore them for purposes of defendants' motions. Plaintiff does not dispute the authenticity of the certified transcripts. Plaintiff actually participated in the hearing on February 10, 2006 and the complaint refers to both proceedings and orders entered by the state court based on those proceedings. See Complaint (Doc. #1) ¶¶ 157-162, 168-173, 175-76. Therefore the Court overrules plaintiff's objection to use of the transcripts. Plaintiff also complains that it did not know of or participate in the hearing on March 17, 2006, but notice of a proceeding is not a requirement for the Court to take judicial notice of the certified transcript of that proceeding. Of course, the state court documents are admitted only for the purpose of establishing that various allegations and statements were made and that the hearings took place, not for the truth of the allegations or statements.

Plaintiff's complaint, as supplemented by the documents attached to the Board's motion, alleges the following facts:

On September 19, 2003, Continental submitted to the Board of County Commissioners of Linn County, Kansas an application for a conditional use permit ("CUP") application and conceptual plan for Lucky Strike Mine in Linn County. Continental proposed to operate a coal mine on land within Linn County on which it had obtained mineral leases and ownership rights. On October 22, 2003, the Board granted Continental a CUP. A condition of the CUP was that Continental's mining operations "be conducted as proposed on all submitted plans and documents as amended." Complaint (Doc. #1) ¶ 23. The plans and documents which Continental submitted contained only two provisions which related to hours of operation. Continental's application stated that "[t]ypically, the mine will employ 10-15 people; and operate during daylight hours, Monday through Friday. However, equipment breakdowns, weather and/or market conditions may require additional operating hours." Id., ¶ 25. Continental's application also stated that "[t]he applicant does not propose to work nights or weekends; except under rare situations, therefore the impacts of noise should be minimal." Id., ¶ 26.

On December 10, 2003, Matt and Laura Cunningham, residents of Linn County, filed suit against the Board in the District Court of Linn County, Kansas. See Case No. 03-CV-312. The Cunninghams challenged the reasonableness of Continental's CUP under K.S.A. § 12-760(a), which provides as follows:

> **12-760. Same; appeals to district court.** (a) Within 30 days of the final decision of the city or county, any person aggrieved thereby may maintain an action in the district court of the county to determine the reasonableness of such final decision.

The Cunninghams alleged that they had purchased a 113 acre tract on July 14, 2000 including a hilltop residence and other residential improvements thereon known as the Cedar Crest Lodge, a bed and breakfast facility, which overlooked Continental's proposed mining operation in the unincorporated portion of Linn County. Continental was not a party to the Linn County lawsuit.

On April 2, 2004, Continental filed with the Kansas Department of Health and Environment ("KDHE") its required application to surface coal mine and reclaim land. On October 4, 2004, the Cunninghams filed objections to Continental's application to KDHE. On December 10, 2004, despite their objections, KDHE issued Order 04-04 which granted Continental's mining permit. On January 26, 2005, pursuant to K.S.A. § 49-416a, the Cunninghams sought administrative review of Order 04-04. On February 11, 2005, the Cunninghams asked KDHE for a stay of the administrative hearing process, but KDHE denied the request. On April 4, 2005, KDHE held a hearing on the Cunninghams' application for review. At the hearing, KDHE upheld its original decision to issue a mining permit to Continental. At the hearing on April 4, 2005, the Cunninghams admitted that they challenged Order 04-04 in an effort to get the hours of operation under the original CUP modified. Id., ¶ 73. No party appealed the final order of KDHE. Id., ¶ 78.

Based on its rights and business expectancies in the CUP, Continental satisfied existing contractual obligations with Kansas City Power & Light Company ("KCPL") and pursued negotiations with KCPL for a new, long term, multi-million dollar coal supply contract. See id., ¶ 20.

On April 1, 2005, the Linn County Counselor, acting as an agent of the Board, issued a position letter to counsel for the Cunninghams about the days and hours of Continental's operation under the CUP. The position letter, which was jointly drafted by the Board or the Board's agent and the Cunninghams, stated as follows:

> During the public hearing on this CUP, there was lengthy discussion of this issue. The coal company's application indicated that except for emergency situations, they would operate Monday through Friday, during daylight hours only. That was the way the application was approved, and that is how the County will enforce it. I expect that when they are close to beginning operations, we will negotiate a more specific definition of "emergency situation"

6

with them and perhaps set up some method of notification of those situations, so we do not have to run out there on a complaint every time they start up a truck. But be assured, we intend to enforce the conditions.  * * *

1.     We would consider any operation, other than occasional emergency situation, occurring outside daylight hours, Monday through Friday, to be in violation of the CUP terms.

2.     Daylight hours would be defined literally, that is by sunrise and sunset times.

3.     Emergency operations would be interpreted as operation necessitated by mechanical breakdowns or weather interruptions. The County will most likely attempt to negotiate this definition with more specificity with the coal company, so we are not running out there on a complaint every time a vehicle is started up.

Note:  This has always been our position. The understanding of staff and officials has always been that the coal company would be operating basically as described above. These elements were discussed at length in the public hearings and it was clear that the limits would be enforced.

Letter from Gary E. Thompson to Lee Tetwiler, Exhibit 3 to Board's Memorandum (Doc. #20).

Continental's application and the plans and documents submitted in conjunction with the application did

not contain an explicit reference to "emergency situations." Complaint (Doc. #1) ¶¶ 81-82.     Between

April 1 and 4, 2005, the Cunninghams and the Board jointly drafted a proposed order which the Honorable

Richard M. Smith of the Linn County District Court entered in the Cunninghams' Linn County lawsuit on

April 4, 2005. The stipulated order noted that Condition 2 of the CUP, which required that Continental's

mining operations "shall be conducted as proposed on all submitted plans and documents as amended,"

was "vague and ambiguous and should be remanded to the Board for clarification of the hours of operation

in order to comply with the terms and provisions of Continental's application and the Commissioners' intent

to limit the same" as stated in the position letter of April 1, 2005. Order, Exhibit 4 to Board's

Memorandum (Doc. #20). Continental was not consulted about the order of April 4, 2005 and has never

agreed to its terms.  After Continental learned of the order, later on April 4, 2005, Continental immediately told the Cunninghams and the Board that the order had no effect on Continental because it was not a party to the Linn County lawsuit.  <u>See</u> <u>Complaint</u> (Doc. #1) ¶¶ 99-100.

Since their purchase of a bed and breakfast in Linn County, the Cunninghams have never sought or obtained a conditional use permit from the Board for the operation of their business.  <u>See</u> <u>id.</u>, ¶ 110. On March 15, 2005, Continental notified the Board counsel and the Linn County Zoning Administrator that the Cunninghams lacked a required conditional use permit for their business.  <u>See</u> <u>id.</u>, ¶ 111.  Continental's mining operations and the Cunninghams' bed and breakfast business are similarly situated and the Board has no reasonable basis to treat their businesses differently.  <u>See</u> <u>id.</u>, ¶¶ 109, 113.

Linn County's Zoning regulations define "nonconforming uses" as "any . . . use, at the time of the effective date of this Zoning Regulations or amendments hereto, which does not conform with the regulations of the district in which it is situated."  Linn County Zoning Regulation 11.08, Exhibit 5 to <u>Board's Memorandum</u> (Doc. #20).  Nonconforming uses of land existing at the same time as the adoption of the zoning regulations are generally permitted to continue.  <u>Id.</u>, 11.09.1(A).  Under the regulations, quarrying, mining and the removal of coal and topsoil and the processing of the same are subject to additional requirements.  <u>Id.</u>, 10.07.64 and 13.04.6.  For new quarries, these requirements include environmental impact assessments for noise and vibration impacts, water impacts, safety and nuisance potential, geological impacts, and wildlife and ecological impacts.  <u>Id.</u>, 13.04.6(c).

On April 11, 2005, the Linn County Counselor sent a letter to Andy Mayhugh, the Linn County Zoning Administrator.  <u>See</u> <u>Complaint</u> (Doc. #1) ¶ 103.  The letter stated the Board's position that a "clarification" of the original CUP could be effectuated with Continental's consent, but that absent such

consent, the original CUP could be unilaterally amended by the Board only if it gave notice and held new hearings.  See id., ¶¶ 104-05.

On September 16, 2005, at the Board's request, Continental requested that its CUP be amended to allow its trucks on all public roads and to modify its hours of operation.  See id., ¶ 127.  Specifically, Continental asked to modify the CUP so that loaded and unloaded coal trucks could use Tiger Road and to modify the hours of operation to seven days a week, 24 hours a day.

At a public hearing on October 11, 2005, the Linn County Zoning Commission recommended that the Board approve an amended CUP with both modified conditions.  On October 25, 2005, the Cunninghams again invoked protest provisions of the Linn County Zoning Regulations to require unanimous Board approval of any amendment to Continental's CUP.  Before the Board's scheduled hearing on November 18, 2005, Continental withdrew its request to modify the hours of operation.  On November 18, 2005, the Board unanimously adopted an amended CUP which permitted Continental to use Tiger Road.  Neither Continental nor the Cunninghams appealed the amended CUP.[1]

On November 18, 2005, Continental advised Board counsel that the Board should consider seeking a dismissal of the Linn County lawsuit by filing a motion to dismiss based on the Cunninghams' failure to join Continental as a necessary party.  Id., ¶ 148.

---

[1]      The amended CUP contained the same condition as the original CUP, i.e. Continental's mining operations "shall be conducted as proposed on all submitted plans and documents as amended."  Complaint (Doc. #1) ¶ 142.  As explained above, the plans and documents which Continental submitted contained only two provisions which related to hours of operation.  Continental's application stated that "[t]ypically, the mine will employ 10-15 people; and operate during daylight hours, Monday through Friday.  However, equipment breakdowns, weather and/or market conditions may require additional operating hours."  Id., ¶ 144.  Continental's application also stated "[t]he applicant does not propose to work nights or weekends; except under rare situations, therefore the impacts of noise should be minimal."  Id., ¶ 145.

On January 1, 2006, Continental and KCPL entered into a new, long term, multi-million dollar coal supply contract.  Id., ¶ 152.  In entering into this contract, Continental relied on its existing rights and expectations under the amended CUP.  Id., ¶ 153.

On December 22, 2005, because the Board had not attempted to clarify Continental's hours of operation, the Cunninghams filed a motion in the Linn County lawsuit to have the Board held in contempt of the order of April 4, 2005.  On January 18, 2006, Continental filed a motion to intervene in the lawsuit for the sole purpose of challenging the order of April 4, 2005.  Continental maintained that it was "a necessary party to [the Linn County lawsuit] and has a substantial interest in the subject matter of this action." Motion to Intervene, Exhibit 8 to Board's Memorandum (Doc. #20).

At a telephone hearing on the motion to intervene held February 10, 2006 before the Honorable Gerald W. Hart, counsel for Continental stated as follows:

> Continental Coal wants to intervene because it wants to make a special appearance in the case for one purpose only and that is to ask the Court to vacate what it believes is a void order.  We don't want to get – You know, we don't want to get drawn into the merits of the case.  We're not asking for any formative relief.

Transcript of Telephone Hearing at 4, Exhibit 9 to Board's Memorandum (Doc. #20).  At the hearing on February 10, 2006, counsel for Continental admitted that it had an interest in any order in the Linn County lawsuit which pertained to the CUP.  See id. at 7-9.  Counsel for the Cunninghams argued that his clients' goal was for the County clarify the hours of operation in the CUP so that the County could enforce them. See id. at 16-18.  Counsel for the Cunninghams and the Board agreed that the hours of operation were the "single real issue" in the Linn County lawsuit.  Id. at 20.  Accordingly, the County took the position that Continental should be made a party to the Linn County lawsuit for all purposes.  See id. at 21.  Counsel

for Continental reiterated that his client wanted to intervene and appear for one purpose only "and to the extent somebody wants [Continental] in the case beyond that, they would have to file a motion and we would kick and scream about it." Id. at 22.

On February 10, 2006, Judge Hart entered an order which stated as follows:

There is little doubt that Continental is a party affected by the present proceedings pending between the Plaintiffs and the Defendant Board; however, the difficulty is that Continental wishes to intervene for the limited purpose of setting aside an order issued by the District Court of Linn County directing the Defendant to "specify the hours of operation of the mining operations allowed by Conditional Use Permit No. 0903291 and specifying the penalties for violations of any of the Conditional Use Permit's conditions."

Continental can seek a modification of the CUP at any time with the Defendant Board. The purpose of the present litigation is to obtain a new order from the Defendant in any event. It serves no purpose in this litigation to simply set the present order aside. The real issue is what order is going to be entered. In order to arrive at that order, it appears to the Court that Continental could very well be a necessary party. Continental certainly does have an interest in any such order and now is making claim that the present order of Judge Smith is void because they were not a party to the proceedings. At the same time Continental does not wish to expand its participation as an intervenor beyond that necessary to attack the present order of Judge Smith.

The Court sees no benefit in this litigation in granting the motion to intervene on such a limited basis and will deny the motion. The Court's anticipation is that Defendant will be filing to add Continental as a necessary party and addressing that motion will be much more productive than the limited nature of the present motion. Interestingly, Continental has already indicated that they will object to being added as a necessary party.

The Court will consider the arguments for joining a necessary party when the appropriate pleadings are on file. For the present, due to the limited nature of Continental's request and given the purposes of the present litigation, the Motion to Intervene for the purpose of setting aside an existing order is denied.

Letter Order, Exhibit 10 to Board's Memorandum (Doc. #20) at 1-2. In a letter from Continental's counsel to Board counsel on February 10, 2006, Continental suggested that the Board file a motion to dismiss for failure to join Continental as a necessary party in the Linn County lawsuit rather than attempt

11

to join it as a party.  Complaint (Doc. #1) ¶ 163.  Neither the Board nor the Cunninghams filed a motion

to join Continental in the Linn County lawsuit.  Id., ¶ 164.  The Board did not file a motion to dismiss the

Linn County lawsuit for failure to join Continental as a necessary party.  Id., ¶ 165.

On February 28, 2006, Continental filed a petition with the Kansas Supreme Court for an order

of mandamus against Judge Hart, the Cunninghams and the Board.  Id., ¶ 167.  At a hearing on March 17,

2006, the Cunninghams and the Board asked Judge Hart to enter an agreed journal entry.  Judge Hart

signed the journal entry, which stated in part as follows:

> 15.    As a result of the defendant's contemptuous failure to comply with the
> prior Orders of this Court, this Court specifically finds that the hours of operation of
> Continental Coal shall be the same as construed by Linn County Counsel Gary E.
> Thompson's correspondence dated April 5, 2005, namely, that "any operation occurring
> outside daylight hours Monday through Friday shall be a violation of the CUP terms" and
> "daylight hours would be defined literally, that is by sunset and sunrise times."
>
> 16.    In order to address the parties' concerns of [Continental's] ability to work
> on weekends in emergency situations, the Court specifically finds that in the event of a true
> emergency when it becomes necessary to do so, the operators may also work on Saturday
> mornings from daylight until noon, but in no event shall operations continue beyond that
> point in time on Saturdays and they may also work on Sundays from noon until sunset."
> * * *
>
> . . . the hours of operation of Conditional Use Permit No. 0903291 shall be and hereby
> are clarified as specifically set forth herein.

Journal Entry, Exhibit 12 to Board's Memorandum (Doc. #20) at 5-6.  On the record at the hearing on

March 17, 2006, Judge Hart observed the following about Continental's position:

> So now, the tenor of that whole conversation [on February 10, 2006] was that
> [Continental] wanted to intervene because of the egregious nature of Judge Smith's order
> and him having the effrontery of sending this back to the county commissioners and
> basically asking a very appropriate question, I think any district court judge in Kansas
> would ask, what does this [condition in the CUP] mean. * * *

I just wanted to make that record clear because they're not here today because they didn't want to be here today.  They're not here because they have made the decision not to participate.  All they want to do is wait and see what happens and then they want to attack whatever happens if they don't like it.  If they do like it, evidently it'll be okay.  Now that's my assessment of – of what's goin' on here. * * *

I want it to be very clear on this record that basically this order is – is not – to consider this order to be amending the – the CUP is – is not accurate.  What this order does is clarify the CUP based upon the previous representations of the coal company.

Transcript of Status Conference, Exhibit 11 to Board's Memorandum (Doc. #20) at 22, 24, 26.

On March 23, 2006, Continental filed a motion with the Kansas Supreme Court for a temporary restraining order to prevent the enforcement of the stipulated order of April 4, 2005 or the journal entry of March 17, 2006 until the Kansas Supreme Court ruled on the validity of the order and journal entry. See Complaint (Doc. #1) ¶ 179.

At a Board of County Commissioners meeting on March 27, 2006, Continental advised that (1) the stipulated order of April 4, 2005 and the journal entry of March 17, 2006 only mentioned the original CUP and (2) Continental was properly operating under the amended CUP, which had not been appealed and was not mentioned in the stipulated order or journal entry.  Id., ¶¶ 184, 188.  On March 31, 2006, the Board advised Continental that (1) the original CUP and amended CUP were one and the same and that both were equally impacted by the stipulated order and journal entry and (2) any operation that was not in accord with the journal entry would be deemed a violation and subject to penalties.  Id., ¶¶ 186, 189.

On April 3, 2006, Continental filed this suit against the Cunninghams and the Board.  Continental alleges that under 42 U.S.C. § 1983, (1) defendants violated its property rights without procedural due process when they failed to join it as a party in the Linn County lawsuit (Count I); (2) the Board violated its right to equal protection of the laws when it did not uniformly apply the Linn County zoning regulations

13

(Count II); and (3) defendants conspired to violate Continental's constitutional rights (Count III). Continental also asserts state law claims for tortious interference with contracts, business relationships and prospective business relationships and abuse of process in the Linn County lawsuit (Counts IV and V). Finally, Continental asserts state law claims against the Cunninghams for abuse of process and malicious prosecution related to the KDHE proceedings and the Cunninghams' administrative appeal of the initial KDHE decision to grant Continental a mining permit (Counts VI and VII).

Defendants argue that (1) plaintiff's federal claims constitute collateral attacks on the state court proceedings and are barred by principles of *res judicata* and collateral estoppel; (2) as to the procedural due process and equal protection claims, plaintiff has failed to state a claim on which relief can be granted; and (3) because plaintiff cannot state a claim for an underlying constitutional violation, it cannot state a claim for civil conspiracy in violation of federal law. In addition, the Cunninghams argue that (1) they did not act under "color of law" for purposes of plaintiff's claims under Section 1983 and (2) even if they did act under color of law, they are entitled to qualified immunity.[2]

## Analysis

### I.    Res Judicata / Collateral Estoppel

The Board argues that because plaintiff filed a mandamus proceeding and a motion for a temporary restraining order with the Kansas Supreme Court, its collateral attacks on the state court proceedings are

---

[2]    In its opposition to the Board's motion, plaintiff submitted 38 pages of argument and authorities. Plaintiff offers no explanation why it exceeded the page limit of 30 pages. See D. Kan. Rule 7.1(e) (absent court order, arguments and authorities section of briefs and memoranda limited to 30 pages); Scheduling Order (Doc. #23) filed July 17, 2006 (same). Because defendants have not objected, the Court will consider plaintiff's entire opposition brief. In the future, however, the parties shall strictly observe the Court's page limits.

barred by *res judicata.* The Board first raised this issue in its reply brief. <u>See</u> <u>Reply Memorandum In</u> <u>Support Of Motion To Dismiss Of Defendant Board Of County Commissioners Of Linn County, Kansas</u> ("<u>Board's Reply</u>") (Doc. #41) filed September 11, 2006 at 4-7. The Court will not consider new arguments in a party's reply brief. <u>See</u> <u>Mondaine v. Am. Drug Stores, Inc.</u>, 408 F. Supp.2d 1169, 1203 (D. Kan. 2006); <u>Thurston v. Page</u>, 931 F. Supp. 765, 768 (D. Kan. 1996); <u>see also</u> <u>Mike v. Dymon, Inc.</u>, No. 95-2405-EEO, 1996 WL 427761, at *2 (D. Kan. July 25, 1996) (in fairness, court generally summarily denies or excludes all arguments and issues first raised in reply briefs). Even if the Board had timely raised the issue, *res judicata* would not bar plaintiff's claims in this action because the record does not reflect that the Kansas Supreme Court denied plaintiff's requests on the merits. <u>See</u> <u>Bd. of Educ.,</u> <u>Unified Sch. Dist No. 464 v. Porter</u>, 234 Kan. 690, 694, 676 P.2d 84, 88 (1984) (*res judicata* does not apply where denial of writ in prior action not based on merits of case); <u>see also</u> <u>Stanfield v. Osborne Indus.,</u> <u>Inc.</u>, 263 Kan. 388, 388 Syl. ¶ 1, 949 P.2d 602, 603 Syl. ¶ 1 (1997) (*res judicata* applies to final judgment on merits), <u>cert. denied</u>, 525 U.S. 831 (1998). The Board does not address this basic principle of claim preclusion law.

The Board also suggests that under principles of *res judicata* and collateral estoppel, Continental cannot attack the judgment in the Linn County lawsuit. <u>See</u> <u>Board's Reply</u> (Doc. #41) at 6, 13. The Linn County lawsuit does not bar plaintiff's action here under *res judicata* or collateral estoppel principles because Continental – or one in privity with it – was not a party to the action. <u>See</u> <u>KPERS v. Reimer &</u> <u>Koger Assocs., Inc.</u>, 262 Kan. 635, 670, 941 P.2d 1321, 1344 (1997); <u>see also</u> <u>Hoover v. Wagner</u>, 47 F.3d 845, 848 (7th Cir. 1995) (opportunity to intervene does not bind non-party to judgment in prior case). Plaintiff has not alleged that it was in privity with the Cunninghams or the Board or that any

exception to the privity requirement applies in this case.

In sum, principles of *res judicata* or collateral estoppel do not bar this proceeding. The Court overrules the Board's motion on this ground.[3]

## II.     Procedural Due Process Claim (Count I)

Plaintiff alleges that defendants violated its property rights without procedural due process when they failed to join it in the Linn County lawsuit.[4] See Complaint (Doc. #1) ¶ 206 ("Defendants' failure to join Plaintiff in the Linn County Lawsuit has deprived Plaintiff of property rights without procedural due process."). Plaintiff's claim is baffling because plaintiff concedes that (1) it did not seek to intervene as a party to the Linn County lawsuit despite an opportunity to do so; (2) at a hearing in the Linn County lawsuit, Continental stated that it would oppose any effort by the Cunninghams or the Board to join it as a party and (3) the process allegedly due plaintiff is provided by a state court rule (K.S.A. § 60-219), not by *county* policy or procedure. Even so, the Court examines plaintiff's claim under the traditional framework for

―――――――――――――――

[3]     The Court also notes that even though Continental asks the Court to declare that the orders in the Linn County lawsuit are void, the Rooker-Feldman doctrine, see Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923); D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983), does not bar its claim because it was not a party in the state court case. See Lance v. Dennis, 546 U.S. 459, 126 S. Ct. 1198, 1201-02 (2006) (Rooker-Feldman doctrine does not bar actions by nonparty to earlier state suit); Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994) (same).

[4]     Plaintiff's brief argues that the Board also violated its procedural due process rights under (1) the applicable planning and zoning statutes, K.S.A. § 12-715b et seq.; (2) the statutes regarding the manner in which county commissioners must conduct business, K.S.A. § 19-201 et seq. including the provision which requires open meetings, K.S.A. § 19-218; (3) the Kansas Open Meetings Act, K.S.A. § 75-4317 et seq. including the provision which applies to county boards, K.S.A. § 75-4318; (4) the Kansas Eminent Domain Procedure Act, K.S.A. § 26-501 et seq.; and (5) the Linn County zoning regulations. See Memorandum In Opposition To Motion To Dismiss Of Defendant Board Of County Commissioners Of Linn County, Kansas (Doc. #38) at 24. Plaintiff's complaint, however, only alleges that defendant violated its procedural due process rights by failing to join it in the Linn County lawsuit. The Court need not consider the additional theories which plaintiff asserts in its opposition memoranda.

procedural due process claims.

Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the due process clause of the Fourteenth Amendment. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The essence of procedural due process is fair play, Patrick v. Miller, 953 F.2d 1240, 1244 (10th Cir. 1992), and the fundamental due process requirement is the opportunity to be heard "at a meaningful time and in a meaningful manner," Mathews, 424 U.S. at 333. To determine whether the Board denied Continental procedural due process, the Court must determine (1) whether Continental possessed a protected interest to which due process is afforded, and then (2) whether Continental received an appropriate level of process. Copelin-Brown v. N.M. State Personnel Office, 399 F.3d 1248, 1254 (10th Cir. 2005).

A.    Protected Interests

In a procedural due process claim, the threshold issue is whether plaintiffs have asserted a protected property or liberty interest. See Graham v. City of Okla. City, 859 F.2d 142, 144 (10th Cir. 1988) (per curiam). The Constitution does not create or define the contours of "liberty" or "property," the "broad and majestic terms" enshrined in the Fourteenth Amendment. Bd. of Regents of State Colls v. Roth, 408 U.S. 564, 571 (1972). Rather, these interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id. at 577; see Paul v. Davis, 424 U.S. 693, 710-11 (1976) (liberty and property interests attain constitutional status if initially recognized and protected by state law). A property interest is created when a person has secured an interest in a specific benefit to which the individual has "a legitimate claim of entitlement." Roth, 408 U.S. at 577. The interest must be more than an "abstract need or desire" or a "unilateral expectation of"

17

the benefit.  Id.  To determine whether procedural due process requirements may apply, the Court must

consider the nature, rather than the weight, of the interest at stake.  Id.  Whether plaintiff has a protectable

interest is a question of law for the Court.  Tarabishi v. McAlester Reg'l Hosp., 827 F.2d 648, 652 (10th

Cir. 1987).

A property interest is created and defined by existing rules or understandings that stem from

sources independent of the Constitution, e.g., state law, secure certain benefits and support claims of

entitlement to those benefits.  Roth, 408 U.S. at 577.  Here, plaintiff has a protected property interest in

the terms of the original and amended CUPs.  See Holman v. City of Warrenton, 242 F. Supp.2d 791, 805

(D. Or. 2002) (plaintiff had legitimate entitlement to develop property consistent with conditional use permit

which city previously granted).  The Board cannot alter Continental's rights under the permits without

adequate process of law.  See Kerley Indus., Inc. v. Pima County, 785 F.2d 1444, 1446 (9th Cir. 1986)

(having granted chemical plant permit to operate, county could not take permit away without appropriate

procedural safeguards).

B.      Appropriate Level Of Process

Plaintiff alleges that defendants violated its procedural due process rights because they failed to join

Continental as a party to the Linn County lawsuit as required by K.S.A. § 60-219.  Generally, to prevent

"substantively unfair or mistaken deprivations," individuals must receive notice and an opportunity to be

heard before the government deprives them of property.[5]  United States v. James Daniel Good Real Prop.,

---

[5]      Random, unauthorized and unanticipated acts of government employees do not constitute
procedural due process violations where the state provides adequate post-deprivation remedies.  See
Palmer v. Unified Gov't of Wyandotte County/Kansas City, Kan., 72 F. Supp.2d 1237, 1252 (D. Kan.
(continued...)

510 U.S. 43, 48, 53 (1993) (quoting <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80-81 (1972)); <u>see also</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985) (essential principle of due process is that deprivation be preceded by notice and opportunity for hearing appropriate to nature of case) (citing <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950)); <u>Rutter & Wilbanks Corp. v. Shell Oil Co.</u>, 314 F.3d 1180, 1187 (10th Cir. 2002) (fundamental requirement of due process is opportunity to be heard at meaningful time in meaningful manner), <u>cert. denied</u>, 539 U.S. 915 (2003). For purposes of defendants' motions, the Court assumes that the state court rulings as to the meaning of the original CUP actually took away Continental's rights under the amended CUP. To state a procedural due process claim, plaintiff must show that the government process which it must follow is insufficient to properly protect its ownership rights. <u>See</u> <u>Winters v. Bd. County Comm'rs</u>, 4 F.3d 848, 856 (10th Cir. 1993), <u>cert. denied</u>, 511 U.S. 1031 (1994); <u>Walden v. Carmack</u>, 156 F.3d 861, 874 (8th Cir. 1998). The deprivation of procedural due process is not complete unless and until the state fails to provide adequate constitutionally essential procedures. <u>Winters</u>, 4 F.3d at 856.

What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances. <u>See</u> <u>Mathews</u>, 424 U.S. at 334. The Court considers the following three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

---

[5](...continued)
1999) (citing <u>Zinermon v. Burch</u>, 494 U.S. 113, 128 (1990)); <u>see also</u> <u>Parratt v. Taylor</u>, 451 U.S. 527, 538 (1981) (normal pre-deprivation notice and opportunity to be heard is pretermitted if state provides adequate post-deprivation remedy), <u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986). Because plaintiff does not allege random, unauthorized or unanticipated acts of county employees, the Court need not address the adequacy of post-deprivation remedies.

procedural safeguards; and (3) the government's interest. <u>Gilbert v. Horner</u>, 520 U.S. 924, 931-32 (1997) (citing <u>Mathews</u>, 424 U.S. at 335).

Plaintiff asserts that defendants violated its procedural due process rights when they failed to join Continental as a party to the Linn County lawsuit as required by K.S.A. § 60-219. Section 60-219, which is patterned after Rule 19 of the Federal Rules of Civil Procedure, provides that whenever a "contingently necessary" party is subject to service of process, the party shall be joined as a party in the action. K.S.A. § 60-219(a). If the contingently necessary party has not been joined, the district court shall order that he be made a party. <u>See id.</u> A person is a "contingently necessary party" if "(1) complete relief cannot be accorded in his absence among those already parties, or (2) he claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action in his absence may (I) as a practical matter substantially impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." <u>Id.</u>[6]

As explained above, to establish a procedural due process claim, plaintiff must show that it lacked

---

[6]    K.S.A. § 60-219(b) states as follows:

Determination by court whenever joinder not feasible. If a contingently necessary person cannot be made a party, the court shall determine whether in equity and good conscience the action ought to proceed among the parties before it or ought to be dismissed. The factors to be considered by the court include: First, to what extent a judgment rendered in the absence of the contingently necessary person might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the absence of the contingently necessary person would be adequate; fourth, whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

notice of or an opportunity to meaningfully participate in the Linn County lawsuit.  See James Daniel Good, 510 U.S. at 48, 53; Loudermill, 470 U.S. at 542.  Plaintiff does not explain how defendants' alleged failure to comply with K.S.A. § 60-219 precluded it from notice and an opportunity to be heard in the Linn County lawsuit.  Plaintiff voluntarily chose to not participate in the state court action.  Based on the allegations in the complaint, plaintiff had a right to intervene under K.S.A. § 60-224, but declined to do so.  See K.S.A. § 60-224(a) (party may intervene as of right when applicant claims interest relating to the property or transaction which is subject of action and it is so situated that the disposition of action may as practical matter substantially impair or impede its ability to protect that interest, unless applicant's interest is adequately represented by existing parties).  A party cannot create a due process claim by ignoring established procedures.  Santana v. City of Tulsa, 359 F.3d 1241, 1244 (10th Cir. 2004).  Because Continental did not ask to intervene as a party in the Linn County lawsuit, it effectively waived any procedural due process claim based on defendants' failure to join it in that suit.  See id. (availability of recourse to constitutionally sufficient administrative procedure satisfies due process requirements if complainant declines or fails to take advantage of procedure); Dusanek v. Hannon, 677 F.2d 538, 542-43 (7th Cir.) (same), cert. denied, 459 U.S. 1017 (1982); see also Rivera v. Bernalillo County, 51 Fed. Appx. 828, 831 (10th Cir. Nov. 12, 2002) (procedural requirements need only be reasonable and give aggrieved party adequate notice and opportunity to meaningfully participate); Krentz v. Robertson, 228 F.3d 897, 904 (8th Cir. 2000) (employee waives procedural due process claim by refusing to participate in post-termination proceedings); Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 325 (10th Cir. 1984) (appellant afforded full panoply of procedural due process when he received adequate notice of settlement hearing and had significant opportunity to be heard by submitting extensive memorandum to court before

settlement hearing).

The risk of erroneous deprivation of Continental's interest in the CUP was minimal through the procedures used. The Linn County lawsuit – in which Continental had the right to intervene – offered Continental significant procedural protections.[7]  Cf. Holman, 242 F. Supp.2d at 808 (violation of procedural due process where city refused to approve building permit application which complied with conditional use permit because no procedural safeguards in place). Continental has not suggested what "additional or substitute procedural safeguards," beyond those already present in a standard judicial proceeding, could be employed. Gilbert, 520 U.S. at 931-32 (quoting Mathews, 424 U.S. at 335). Continental only complains that the Cunninghams and the Board should have joined it as a party and that they conspired against it.[8] Continental, however, strategically decided not to intervene. By doing so, it may argue that it is not bound by the judgment in the lawsuit, but it cannot assert that it did not have notice and

---

[7]     Because Continental complains of the effect of the Linn County District Court order, the Court evaluates the procedures available to plaintiff in that proceeding, not the proceedings ordinarily used by the Board to alter or modify a conditional use permit. See Eguia v. Tompkins, 756 F.2d 1130, 1139 (5th Cir. 1985) (standard not whether state deviates from own procedures, but whether it deviates from process required under Constitution); Goodrich v. Newport News Sch. Bd., 743 F.2d 225, 227 (4th Cir. 1984) (when minimal due process requirements of notice and hearing have been satisfied, claim that agency did not follow its policies or regulations does not establish procedural due process violation); see also Mathews, 424 U.S. at 334 (process required depends on practical requirements of circumstances).

[8]     From the complaint, it appears that plaintiff also alleges that the judge in the Linn County lawsuit denied Continental procedural due process because he did not join Continental as a party for all purposes. See K.S.A. § 60-219 (if contingently necessary party not joined in action, court shall order that he be made party); see also Complaint (Doc. #1), Count I, ad damnum clause ¶ e. Of course, the judge is entitled to judicial immunity for his decision not to join Continental as a party. See Forrester v. White, 484 U.S. 219, 227 (1988) (immunity for paradigmatic judicial acts involved in resolving disputes between parties); Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (judge not deprived of immunity because action in error, done maliciously or in excess of authority). Continental's procedural due process claim is a back-door attempt to hold the parties to the Linn County lawsuit responsible for allegedly erroneous judicial rulings as to joinder.

a meaningful opportunity to be heard in the case.[9]  Cf. Mid-American Waste Sys., Inc. v. City of Gary,

49 F.3d 286, 291 (7th Cir. 1995) (when issue is meaning of commercial contract, prior hearing

unnecessary and opportunity to litigate in state court is all process due to determine whether state has kept

its promise).

Continental argues that under Bishop v. Fischer, 94 Kan. 105, 145 P. 890 (1915), it was not

required to voluntarily submit to the jurisdiction of the Linn County District Court.  See Memorandum In

Opposition To Motion To Dismiss Of Defendant Board Of County Commissioners Of Linn County,

Kansas (Doc. #38) at 23-24.  In Bishop, the Kansas Supreme Court held that it had jurisdiction to hear

a mandamus action by nonparties who had their rights impaired by a district court injunction and who had

previously challenged the district court's jurisdiction to enter the injunction.  See Bishop, 94 Kan. at 107-

08, 145 P. at 891.  Bishop noted as follows:

> Under these circumstances the plaintiffs were not obliged to submit to the jurisdiction of
> the district court, nor to await its pleasure in finally disposing of the case, nor to adopt the
> slower remedy of appeal, if, indeed, they were in a situation to appeal.  Their only
> adequate remedy was one which would free them immediately from the embarrassments
> of the order.

Id. at 108, 145 P. at 891.  Of course, Bishop permitted relief against the district judge in the form of

mandamus.  Bishop does not suggest that civil damages from parties to a district court action are

---

[9]      The Board also argues that Continental had the opportunity to appeal the Journal Entry under K.S.A. § 12-760, which permits an appeal of any final decision of the County by any person aggrieved thereby to determine the reasonableness of such decision.  The Board maintains that since all Board members signed the Journal Entry, it constituted the final decision of the County.  For purposes of defendants' motion, the Court does not consider the Journal Entry a final decision *of the County*.  Under the Board's theory, nearly every litigation decision by a county would be subject to judicial review for reasonableness under K.S.A. § 12-760.

appropriate under a procedural due process theory based on failure to join non-parties.  Continental's argument that it was not required to join the Linn County lawsuit is more properly raised as a defense to a claim of *res judicata* or collateral estoppel in an enforcement proceeding based on the orders in the prior case.  See Arapahoe County v. F.A.A., 242 F.3d 1213, 1220 (10th Cir. 2001) (no issue preclusion based on prior state court proceedings where FAA merely knew of state court proceedings but chose not to participate in them).

Continental asks the Court to declare void the orders entered in the Linn County lawsuit.  See Complaint (Doc. #1), Count I, ad damnum clause ¶ e (seeking judgment that stipulated order and journal entry are void); see also Memorandum In Opposition To Motion To Dismiss Of Defendants Matt Cunningham And Laura Cunningham (Doc. #39) filed August 18, 2006 at 9 (actions of defendants and Linn County District Court should be declared void).  A void judgment or order is a nullity and may be vacated at any time on motion of a party or any person affected thereby.  Universal Modular Structures, Inc. v. Forrest, 11 Kan. App.2d 298, 300, 720 P.2d 1121, 1123 (1986).  A judgment is void only if the court which rendered it lacked jurisdiction of the subject matter or of the parties or if the court acted in a manner inconsistent with due process.  Id. at 300, 720 P.2d at 1124.  The failure to join a necessary party is not a jurisdictional defect.  See Advisory Committee Notes to the 1966 amendment of Rule 19 (rule amended to make clear that even if court erroneously proceeds in absence of interested person, it has power to adjudicate as between parties before it); Rippey v. Denver U.S. Nat'l Bank, 42 F.R.D. 316, 318-19 (D. Colo. 1967) (under Rule 19, court determines whether it ought to proceed without absent party, not whether it has jurisdiction to proceed against those who are present).

Continental apparently maintains that the orders in the Linn County lawsuit are void because the

court acted in a manner inconsistent with its due process rights.  In <u>Universal Modular Structures</u>, a party

obtained a default judgment for some $195,000 even though the defaulting defendant was only on notice

that plaintiff sought damages in excess of $10,000.  <u>See</u> <u>id.</u> at 299-301, 720 P.2d at 1123-24.  Kansas

Supreme Court Rule 118(d) requires that before any default judgment is taken, the party seeking relief must

notify the defaulting party of the amount of money for which judgment will be taken.  The Kansas Court

of Appeals held that compliance with Rule 118(d) is mandatory but that a party's failure to comply only

renders a default judgment "voidable," <u>i.e.</u> subject to direct attack by the parties but not a collateral attack

by a third party.  <u>Id.</u> at 301, 720 P.2d at 1124.  The Kansas Court of Appeals noted that the minimum

notification in the complaint – damages in excess of $10,000 – did not comply with plaintiff's mandatory

duty under Rule 118(d), but that it satisfied basic due process requirements.  <u>See</u> <u>id.</u> at 301, 720 P.2d at

1124; <u>see also</u> <u>Becker v. Roothe</u>, 184 Kan. 830, 834, 339 P.2d 292, 296-97 (1959) (judgment not void

however irregular or erroneous court proceedings may be or voidable judgment may be).

    Like Kansas Supreme Court Rule 118(d), compliance with K.S.A. § 60-219 is mandatory.  Even

so, a judgment rendered in an action where the parties and the court have failed to join a contingently

necessary party is not void.[10]  <u>See</u> <u>Koehler v. Dodwell</u>, 152 F.3d 304, 309 n.7 (4th Cir. 1998) (Fed. R.

Civ. P. 19); <u>United States v. O'Neil</u>, 709 F.2d 361, 371 (5th Cir. 1983) (same); <u>see also</u> <u>Thunder Basin</u>

---

[10]    Plaintiff alleges that K.S.A. § 12-760 is unconstitutional because it violates citizens' rights under the Fifth and Fourteenth Amendments "if actions thereunder are not required to be filed and pursued in conjunction with the requirements of K.S.A. 60-219."  <u>Complaint</u> (Doc. #1) ¶ 46; <u>see</u> <u>id.</u>, ¶ 204 (actions under K.S.A. § 12-760 must be brought in compliance with K.S.A. § 60-219).  The Court need not address the issue whether a procedural due process violation could be found in some instance where a non-party did not know of a state court action because under the circumstances of this case, Continental knew about the Linn County lawsuit but elected not to intervene.

Coal Co. v. S.W. Pub. Serv. Co., 104 F.3d 1205, 1211 n.4 (10th Cir. 1997) (issue of indispensable party is not jurisdictional); 4 James Wm. Moore et al., Moore's Federal Practice § 19.02[4][c] (3d ed. 1998) (judgment rendered in absence of indispensable party not subject to collateral attack); 7 Charles Alan Wright et al., Federal Practice & Procedure: Civil 3d § 1611 (3d ed. 2001) (same). The notification about the purpose of the Linn County lawsuit which Continental received at the hearing on its motion to intervene was sufficient to satisfy basic due process requirements.

For the above reasons, the Court sustains defendants' motions for judgment on the pleadings on plaintiff's procedural due process claim.

**III.     Equal Protection Claim (Count II)**

Continental alleges that defendants violated its right to equal protection of the laws when it did not uniformly apply the Linn County zoning regulations. The Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. At the heart of any equal protection claim must be an allegation of being treated differently than those similarly situated. Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). In addition, unless plaintiff alleges a violation of a fundamental right or discrimination against a suspect class, defendants only need a rational justification for the different treatment. See Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996); see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) ("class of one" must show that he has been intentionally treated differently from others similarly situated and no rational basis for difference in treatment).

The Board argues that Continental has failed to state an equal protection claim. Coal companies are a non-suspect class and rational basis scrutiny applies. City of Cleburne v. Cleburne Living Ctr., 473

U.S. 432, 442-46 (1985); Davoll v. Webb, 194 F.3d 1116, 1145 (10th Cir. 1999). Under the rational basis test, the Court must uphold the policy if any reasonably conceivable state of facts could provide a rational basis for the classification. Spragens v. Shalala, 36 F.3d 947, 951 n.3 (10th Cir. 1994) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). To survive a motion to dismiss, plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications. See Brown v. Zavaras, 63 F.3d 967, 971 (10th Cir. 1995).

Accepting as true all well-pleaded factual allegations and drawing all reasonable inferences from those facts in favor of plaintiff, Continental has stated an equal protection claim against the Board. Continental alleges that (1) its business and the Cunninghams' business are similarly situated; (2) the Board has refused to require the Cunninghams to obtain a CUP for their business even though such a permit is required by the Linn County zoning regulations; and (3) the Board intentionally and unreasonably treated Continental differently for the personal benefit of the Cunninghams. See Complaint (Doc. #1) ¶¶ 109-16. Plaintiff has alleged the basic elements of an equal protection claim – differential treatment of similarly situated individuals and the lack of a rational basis for the difference in treatment. See Vill. of Willowbrook, 528 U.S. at 564; cf. Jacobs, Visconsi & Jacobs Co. v. City of Lawrence, Kan., 715 F. Supp. 1000 (D. Kan. 1989) (dismissing equal protection claim in part because no allegation that adjacent, similarly situated land owners treated differently), aff'd, 927 F.2d 1111 (10th Cir. 1991).

The Board argues that because the Cunninghams purchased an existing bed and breakfast facility which had a pre-existing non-conforming use, they were not required to obtain a CUP under the zoning regulations. See Board's Memorandum (Doc. #20) at 20. The Board relies on portions of the Cunninghams' petition in the Linn County lawsuit. See Petition ¶ 2b in Linn County lawsuit, attached as

Exhibit 2 to Board's Memorandum (Doc. #20).  As explained above, on a motion for judgment on the pleadings, the Court considers a petition in a separate lawsuit only for the purpose of establishing that the allegations were made, not for the truth of the allegations.  Based on the complaint in this action, plaintiff has stated a claim again the Board for denial of the right to equal protection.[11]

The Cunninghams argue that the Court should dismiss plaintiff's equal protection claim because they did not act under "color of law."  42 U.S.C. § 1983.  The only proper defendants in a Section 1983 claim are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it."  Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988) (quoting Monroe v. Pape, 365 U.S. 167, 172 (1961)).  The "color of law" requirement under Section 1983 has consistently been treated as imposing the same standard as the "state action" requirement under the Fourteenth Amendment.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982); Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982); United States v. Price, 383 U.S. 787, 794 n.7 (1966).  The Supreme Court has found "state action" primarily under the following four tests: (1) the public function test; (2) the nexus test; (3) the symbiotic relationship test and (4) the joint action test.  See Lugar, 457 U.S. 922, 939 (1982); Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1453-56 (10th Cir. 1995).  Continental maintains that the Cunninghams' wrongful conduct satisfies all of these tests.  See Memorandum In Opposition To Motion

_____

[11]      In the complaint, plaintiff alleges that its equal protection claim may be appropriate under 42 U.S.C. § 1985 in the context of "intentional, malicious and invidious discrimination."  Complaint (Doc. #1) ¶ 211.  Section 1985(3) prohibits conspiracies "motivated by some racial, or perhaps other class-based, invidiously discriminatory animus."  Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (internal quotations omitted).  Because plaintiff has not alleged that it belongs to a protected class, it cannot maintain a claim under Section 1985.  Accordingly, the Court dismisses plaintiff's equal protection and civil conspiracy claims to the extent they are brought under 42 U.S.C. § 1985(3).

To Dismiss Of Defendants Matt Cunningham And Laura Cunningham (Doc. #39) at 13.

To apply the first three of the above tests in the context of Continental's equal protection claim is awkward to say the least. Except for the joint action test, the "state action" tests are ordinarily used to determine whether the actions of a private party can be considered conduct of a governmental entity. Here, in the context of its equal protection claim, Continental seeks to hold private parties, the Cunninghams, responsible for the decision of a governmental entity, i.e. the Board's decision to require a permit for Continental's business but not the Cunninghams' business. Given that Continental seeks to satisfy the "color of law" requirement by use of the four "state action" tests outlined above, the Court considers each in turn.

A.     Public Function Test

A private party is a state actor if the state delegates to that party a function "traditionally exclusively reserved to the State." Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974); see Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991); Rendell-Baker, 457 U.S. at 842; Blum v. Yaretsky, 457 U.S. 991, 1011 (1982); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). This test is difficult to satisfy. Gallagher, 49 F.3d at 1456; see Johnson v. Rodrigues, 293 F.3d 1196, 1203 (10th Cir. 2002). While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State. Flagg Bros., 436 U.S. at 158 (citing Jackson, 419 U.S. at 356). The test may be satisfied in situations where private parties hold elections, perform necessary municipal functions, or run a nursing facility. Johnson, 293 F.3d at 1203. In such situations, the actions are considered equivalent to "state action" because the private parties performed a service which was traditionally the exclusive prerogative of the state. Id.

29

Continental argues that through the Linn County lawsuit, the Cunninghams and the Board jointly acted to "perform necessary municipal functions," i.e. the Board's legislative and quasi-judicial functions as a zoning authority. See Memorandum In Opposition To Motion To Dismiss Of Defendants Matt Cunningham And Laura Cunningham (Doc. #39) at 14. Continental has alleged that the Linn County District Court, not the Cunninghams, performed this necessary municipal function. Because Continental has not alleged that the Board delegated its zoning authority functions to the Cunninghams, the public function test is not satisfied. In addition, the issues whether Continental and the Cunninghams were required to obtain a permit were not litigated in the Linn County lawsuit. Accordingly, the Board's alleged delegation of its functions in that lawsuit is not relevant to plaintiff's equal protection claim.

B.     Nexus Test

Under the nexus test, plaintiff must demonstrate that sufficiently close nexus between the government and the challenged conduct such that the conduct "may be fairly treated as that of the State itself." Gallagher, 49 F.3d at 1448 (quoting Jackson, 419 U.S. at 351). Under this approach, a state normally can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Id. (quoting Blum, 457 U.S. at 1004). Merely availing oneself of state judicial procedures is insufficient to constitute state action. Johnson, 293 F.3d at 1203 (citing Lugar, 457 U.S. at 939 n.21).

The Supreme Court has set forth several important principles in applying the nexus test. First, the existence of governmental regulations, standing alone, does not provide the required nexus. Gallagher, 49 F.3d at 1448; see Blum, 457 U.S. at 1004; Jackson, 419 U.S. at 350. Likewise, the fact that a private

entity contracts with the government or receives governmental funds or assistance does not automatically transform the conduct of that entity into state action. Gallagher, 49 F.3d at 1448; see Rendell-Baker v. Kohn, 457 U.S. 830, 840-42 (1982); San Francisco Arts & Athletics, Inc. v. United States Olympic Comm., 483 U.S. 522, 544 (1987). Finally, mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the state responsible for those initiatives under the terms of the Fourteenth Amendment. Blum, 457 U.S. at 1004-05; Gallagher, 49 F.3d at 1448.

Continental argues that the nexus between the Cunninghams and the Board was so close that "their actions are one and the same" because through the Linn County lawsuit, defendants jointly acted to take away Continental's rights under the CUP and alter the hours of operation permitted thereunder. Memorandum In Opposition To Motion To Dismiss Of Defendants Matt Cunningham And Laura Cunningham (Doc. #39) at 15-16. Continental does not explain how defendants' actions in the Linn County lawsuit relate to its equal protection claim. Based on the well-pleaded factual allegations in the complaint, Continental's equal protection claim is based on the *Board* decision not to require the Cunninghams to obtain a CUP since they first operated a bed and breakfast, and particularly after March 15, 2005, when Continental notified the Board that the Cunninghams did not have the required permit. See Complaint (Doc. #1) ¶¶ 110-12.[12] Continental has not alleged a nexus between the

---

[12] In its memoranda on defendants' motions, Continental largely characterizes its equal protection claim as a challenge to the Board decision not to require the Cunninghams to obtain a CUP. See Memorandum In Opposition To Motion To Dismiss Of Defendant Board Of County Commissioners Of Linn County, Kansas (Doc. #38) at 35-36 ("Plaintiff's equal protection claims relate squarely to the fact that notwithstanding the clear requirements of Article 10 of the Zoning Regulations, the Board has chosen to discriminate in the application of such provisions in favor of the private interests of the Cunninghams. The Board has required Plaintiff [and all of the other conditional use permit holders in Linn County] to

(continued...)

Cunninghams and the Board with respect to the decision to require Continental, but not the Cunninghams, to obtain a CUP. Indeed, the Board took the pertinent action, i.e. its decision not to require the Cunninghams to obtain a permit. Continental has not alleged sufficient facts to establish a nexus between the conduct of the Board and the Cunninghams relating to the disparate enforcement of the permit requirement.

C.     Symbiotic Relationship Test

Under the symbiotic relationship test, the state must have so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity. Gallagher, 49 F.3d at 1451 (citing Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)). Extensive state regulation, receipt of substantial state funds, and performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a

---

[12](...continued)
comply with the provisions of Article 10 but has not required the Cunninghams to so comply."); id. at 37 (equal protection claim challenges arbitrary and discriminatory application of Article 10 of county zoning regulations to similarly situated landowners for the benefit of the Cunninghams' private business interests); id. at 38 (two factual questions on equal protection claim are whether Article 10 applies to the Cunninghams and if so, whether the Board had rational basis not to enforce provision against Cunninghams). To a limited extent, Continental refers to defendants' conduct in the Linn County lawsuit as support for its claim of conspiracy to deprive Continental of its right to equal protection. See id. at 36 (fact that counsel for the Board and Cunninghams jointly drafted stipulated order and journal entry tends to show that the Board and the Cunninghams acted together to deprive plaintiff of its right to equal protection). Based on the allegations of the complaint and Continental's arguments throughout its memoranda, the Court construes Continental's equal protection claim as a challenge only to the Board decision to require Continental, but not the Cunninghams, to obtain a CUP. Allegations of the joint conduct of the Board and the Cunninghams in the Linn County lawsuit are relevant to Continental's equal protection claim only to establish agreement between the Board and the Cunninghams. Such allegations do not assert an additional equal protection violation beyond the Board decision not to require the Cunninghams to obtain a permit.

private entity that is required for state action.  Id.

Continental argues that in the Linn County lawsuit, the Board "rolled over" for the Cunninghams and never made a good faith effort to defend the original CUP as written.  Memorandum In Opposition To Motion To Dismiss Of Defendants Matt Cunningham And Laura Cunningham (Doc. #39) at 17.  In particular, Continental maintains that (1) the Board refused to file a motion to dismiss in the Linn County lawsuit for failure to join a necessary party and (2) the Board and the Cunninghams jointly drafted the stipulated order and journal entry which took away Continental's rights under the CUP and altered the hours of operation permitted thereunder.  See id. at 17-18.  As explained above, Continental's equal protection claim is based on the *Board* decision not to require the Cunninghams to obtain a CUP since they first operated a bed and breakfast, and particularly after March 15, 2005, when Continental notified the Board that the Cunninghams did not have the required permit.  See Complaint (Doc. #1) ¶¶ 110-12. Continental has not alleged a symbiotic relationship between the Cunninghams and the Board with respect to the decision to require Continental, but not the Cunninghams, to obtain a CUP.  The fact that the Cunninghams agreed with the Board decision is insufficient to establish a symbiotic relationship between the Cunninghams and the Board.  Cf. Blum, 457 U.S. at 1004-05 (mere approval of or acquiescence in initiatives of private party not sufficient to hold state responsible for those initiatives); Gallagher, 49 F.3d at 1453 (same).

D.    Joint Action Test

Under the joint action test, state action is present if a private party willfully participates in joint action with the state or its agents.  Gallagher, 49 F.3d at 1453 (citing Dennis v. Sparks, 449 U.S. 24 (1980)).  Courts generally "examine whether state officials and private parties have acted in concert in

effecting a particular deprivation of constitutional rights." Id.; see Johnson, 293 F.3d at 1205.  State action

is present based on a substantial degree of cooperative action between state and private officials, or "overt

and significant state participation" in carrying out the deprivation of the plaintiff's constitutional rights.

Gallagher, 49 F.3d at 1453 (citing Hoai v. Vo, 935 F.2d 308, 313 (D.C. Cir. 1991)); see Johnson, 293

F.3d at 1205.  One way of inferring joint action is where "both public and private actors share a common,

unconstitutional goal."  Gallagher, 49 F.3d at 1454.

Continental argues that the joint action test is satisfied because (1) the Cunninghams and the Board

refused to join Continental as a necessary party to the Linn County lawsuit; (2) the Board refused to file

a motion to dismiss in that suit for failure to join a necessary party; (3) the Board and the Cunninghams

jointly drafted the stipulated order and journal entry, which took away Continental's rights under the CUP

and altered the hours of operation permitted thereunder; and (4) the Board refused to appeal the journal

entry.  Memorandum In Opposition To Motion To Dismiss Of Defendants Matt Cunningham And Laura

Cunningham (Doc. #39) at 18-20.   Continental maintains that absent a "joint, cooperative and

conspiratorial effort" between the Cunninghams and the Board, the Linn County District Court would not

have entered the stipulated order or journal entry.  Id. at 20.  As explained above, Continental's equal

protection claim is based on the *Board* decision not to require the Cunninghams to obtain a CUP since they

first operated a bed and breakfast, and particularly after March 15, 2005, when Continental notified the

Board that the Cunninghams did not have the required permit.  See Complaint (Doc. #1) ¶¶ 110-12.

Continental has not alleged joint action between the Cunninghams and the Board with respect to the

decision to require Continental, but not the Cunninghams, to obtain a CUP.   See Sigmon v.

CommunityCare HMO, Inc., 234 F.3d 1121, 1126 (10th Cir. 2000) (to satisfy joint action test, pleadings

must specifically present facts tending to show agreement and concerted action); Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir. 1994) (same).  The facts that the Cunninghams did not seek a permit and that they agreed with the Board's decision not to require one are insufficient to establish joint action between the Cunninghams and the Board.  Cf. Blum, 457 U.S. at 1004-05 (mere approval of or acquiescence in initiatives of private party is not sufficient to hold state responsible for those initiatives); Gallagher, 49 F.3d at 1453 (same).[13]

In sum, the Court overrules the Board's motion for judgment on the pleadings on Count II. Because Continental has not alleged sufficient facts to establish that the Cunninghams acted under color of law with respect to Continental's equal protection claim, the Court sustains the Cunninghams' motion for judgment on the pleadings on Count II.[14]

## IV.    Civil Conspiracy (Count III)

Plaintiff does not indicate whether its conspiracy claim arises under federal or state law.  A civil conspiracy claim may be asserted under Section 1983 for the concerted deprivation of a constitutional right under color of state law, see Dixon v. City of Lawton, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990), and

---

[13]     Indeed, even if the complaint alleged that the Cunninghams asked the Board for special permission not to obtain a permit, it would not be sufficient to show that they acted under color of law.  See Carey v. Cont'l Airlines Inc., 823 F.2d 1402 (10th Cir. 1987) (citizens who made complaints that resulted in arrests not state actors); Lee v. Town of Estes Park, 820 F.2d 1112 (10th Cir. 1987) (same); Lane v. Johnson, 385 F. Supp.2d 1146, 1151 (D. Kan. 2005) (fact that private party furnished information, even if false, not sufficient to constitute joint activity with state officials to state actionable claim under Section 1983); cf. Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1429 (10th Cir. 1984) (store security guard who reported suspected shoplifter to police was state actor), cert. denied, 474 U.S. 818 (1985).

[14]     The Cunninghams also argue that even if they are considered state actors, they are entitled to qualified immunity.  Because the Court has determined that the Cunninghams were not state actors, the Court need not address this alternative argument.

35

under Kansas law for the concerted commission of an actionable underlying tort, see Meyer Land & Cattle Co. v. Lincoln County Conservation Dist., 29 Kan. App.2d 746, 753, 31 P.3d 970, 976 (2001).  Here, plaintiff apparently alleges that defendants conspired to commit constitutional violations (procedural due process and equal protection) and torts actionable under Kansas law (tortious interference, abuse of process and malicious prosecution).  The Court therefore construes plaintiff's conspiracy claim as arising under both Section 1983 and Kansas law.  The parties have not addressed whether plaintiff can maintain a conspiracy claim against the Cunninghams and the Board in light of the fact that defendants did not satisfy the "joint action" test.  The Court therefore declines to do so.  Because Continental has stated a claim against the Board for denial of its right to equal protection, the Court overrules defendants' motions as to plaintiff's conspiracy claim under Section 1983 based on the denial of equal protection.  Because the Court has dismissed Continental's procedural due process claim, it sustains defendants' motions as to plaintiff's conspiracy claim under Section 1983 based on the denial of procedural due process.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss Of Defendant Board Of County Commissioners of Linn County, Kansas (Doc. #19) filed July 14, 2006, which the Court construes as a motion for judgment on the pleadings under Rule 12(c), be and hereby is **SUSTAINED in part**.  The motion is sustained as to Count I and the portion of Count III brought under 42 U.S.C. § 1983 based on the denial of procedural due process.  The motion is otherwise overruled.

**IT IS FURTHER ORDERED** that the Motion To Dismiss Of Defendants Matt And Laura Cunningham (Doc. #32) filed July 26, 2006, which the Court construes as a motion for judgment on the pleadings under Rule 12(c), be and hereby is **SUSTAINED in part**.  The motion is sustained as to Counts I and II and that portion of Count III brought under 42 U.S.C. § 1983 based on the denial of

procedural due process.  The motion is otherwise overruled.

**IT IS FURTHER ORDERED** that the following claims remain in this case: Count II (denial of equal protection) against the Board only, Count III to the extent it is brought under 42 U.S.C. § 1983 based on the denial of equal protection and under Kansas law and Counts IV through VII in their entirety.

Dated this 2nd day of March, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Court

37