## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CONTINENTAL COAL, INC.,                )
                                       )
                    Plaintiff,         )
                                       )        CIVIL ACTION
v.                                     )
                                       )        No. 06-2122-KHV
MATT CUNNINGHAM, LAURA CUNNINGHAM,     )
and BOARD OF COUNTY COMMISSIONERS OF   )
LINN COUNTY, KANSAS,                   )
                                       )
                    Defendants.        )
_____)

## MEMORANDUM AND ORDER

On April 3, 2006, Continental Coal, Inc. filed suit against Matt and Laura Cunningham and the Board of County Commissioners of Linn County, Kansas.  Under 42 U.S.C. § 1983, Continental alleges that by attempting to modify the hours of operation of a conditional use permit for it to mine coal on certain property in Linn County, Kansas, defendants violated its rights to procedural due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution.  Continental also asserts state law claims for tortious interference with business expectancies, abuse of process and malicious prosecution.  This matter is before the Court on the Motion for Summary Judgment of Defendant Board of County Commissioners of Linn County, Kansas (Doc. #151) and Continental Coal, Inc.'s Motion for Partial Summary Judgment (Doc. #154), both filed January 18, 2008.  For reasons stated below, the Court sustains the Board's motion and denies Continental's motion.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [it] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on its pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so

one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

## Factual Background

Because the Court first addresses the Board's motion for summary judgment, the following facts are uncontroverted or are related in the light most favorable to Continental:

On October 22, 2003, the Board granted Continental a conditional use permit ("CUP") to operate a coal mine on land within Linn County. A condition of the CUP was that Continental's mining operations "be conducted as proposed on all submitted plans and documents as amended." The plans and documents which Continental submitted contained two provisions which related to hours of operation. Continental's application first stated that "[t]ypically, the mine will employ 10-15 people; and operate during daylight hours, Monday through Friday," but that "equipment breakdowns, weather and/or market conditions may require additional operating hours." Continental's application also stated that "[t]he applicant does not propose to work nights or weekends; except under rare situations, therefore the impacts of noise should be minimal."

On December 10, 2003, Matt and Laura Cunningham, residents of Linn County, filed suit against the Board in the District Court of Linn County, Kansas. <u>See</u> Case No. 03-CV-312. The Cunninghams owned the Cedar Crest Lodge, a bed and breakfast facility overlooking Continental's proposed mining operation in the unincorporated portion of Linn County. In the lawsuit, the Cunninghams challenged the reasonableness of Continental's CUP under K.S.A. § 12-760(a). Continental was not a party to the suit.

On April 2, 2004, Continental filed with the Kansas Department of Health and Environment ("KDHE") its required application to surface mine coal and reclaim land. On October 4, 2004, the Cunninghams filed objections to that application. On December 10, 2004, despite the objections,

KDHE issued Order 04-04, which granted Continental's mining permit.  On January 26, 2005, pursuant to K.S.A. § 49-416a, the Cunninghams sought administrative review.  On February 11, 2005, the Cunninghams asked KDHE to stay the administrative hearing process.  KDHE denied the request to stay and on April 4, 2005, held a hearing on the application for review.  At the hearing, KDHE upheld its original decision to issue a mining permit to Continental.  No party appealed that order.

On April 1, 2005, the Linn County Counselor, acting as an agent of the Board, issued a position letter to the Cunninghams' counsel about the days and hours of Continental's operation under the CUP.  The position letter, which the Board or the Board's agent jointly drafted with the Cunninghams, stated that the Board would enforce Continental's CUP as limiting Continental's operations to daylight hours (sunrise to sunset) from Monday through Friday, except for occasional emergency situations necessitated by mechanical breakdowns or weather interruptions.

The Cunninghams and the Board then jointly drafted a proposed order which the Linn County District Court entered on April 4, 2005.  The stipulated order noted that Condition 2 of the CUP, which stated that mining operations "shall be conducted as proposed on all submitted plans and documents as amended," was "vague and ambiguous and should be remanded to the Board for clarification of the hours of operation in order to comply with the terms and provisions of Continental's application and the Commissioners' intent to limit the same" as stated in the position letter of April 1, 2005.

On September 16, 2005, at the Board's request, Continental requested that its CUP be amended to allow its trucks on all public roads and to modify its hours of operation.  Specifically, Continental asked to modify the CUP so that trucks could use Tiger Road and hours of operation

would be seven days a week, 24 hours a day.  The Cunninghams invoked protest provisions of the Linn County Zoning Regulations to require unanimous Board approval of the amendment, and Continental withdrew its request to modify the hours of operation.  On November 18, 2005, the Board unanimously adopted an amended CUP which permitted Continental trucks to use Tiger Road.  Neither Continental nor the Cunninghams appealed the amended CUP.

On December 22, 2005, because the Board had not attempted to clarify Continental's hours of operation, the Cunninghams filed a motion in the Linn County lawsuit to have the Board held in contempt of the order of April 4, 2005.  On January 18, 2006, Continental filed a motion to intervene in the lawsuit for the sole purpose of challenging the order of April 4, 2005.  On February 10, 2006, the Linn County District Court denied Continental's motion to intervene for that limited purpose. No party subsequently sought to join Continental as a party to the lawsuit.

On February 28, 2006, Continental filed a petition with the Kansas Supreme Court for an order of mandamus against the Linn County District Court, the Cunninghams and the Board.  At a hearing on March 17, 2006, upon request of the Cunninghams and the Board, the district court entered an agreed journal entry ("the Journal Entry"), which stated in part as follows:

> 15.    As a result of the defendant's contemptuous failure to comply with the prior Orders of this Court, this Court specifically finds that the hours of operation of Continental Coal shall be the same as construed by Linn County Counsel Gary E. Thompson's correspondence dated April 5, 2005, namely, that "any operation occurring outside daylight hours Monday through Friday shall be a violation of the CUP terms" and "daylight hours would be defined literally, that is by sunset and sunrise times."
>
> 16.    In order to address the parties' concerns of [Continental's] ability to work on weekends in emergency situations, the Court specifically finds that in the event of a true emergency when it becomes necessary to do so, the operators may also work on Saturday mornings from daylight until noon, but in no event shall operations continue beyond that point in time on Saturdays and they may also work on Sundays from noon until sunset. * * *

. . . the hours of operation of Conditional Use Permit No. 0903291 shall be and hereby are clarified as specifically set forth herein.

The Board asserts that it agreed to the Journal Entry in order to settle the litigation with the Cunninghams, but the parties agree that the Journal Entry is legally unenforceable.  On March 23, 2006, in the Kansas Supreme Court, Continental filed an amended petition for writ of mandamus and a motion for a temporary restraining order against the Linn County District Court, the Cunninghams and the Board.  On May 9, 2006, the Kansas Supreme Court summarily denied the requests for relief.  See No. 06-96137-S (Kan. May 9, 2006).

At a Board hearing on March 27, 2006, Continental delivered a letter which complained that the Journal Entry "came about" without due process and amounted to an illegal taking and abuse of process to Continental.  Continental demanded that the Board appeal the Journal Entry and stated that if it did not do so, "Continental Coal will have no choice but to reserve all of its rights and claims for damages and relief arising from the tortious and unlawful conduct and actions of the Cunninghams and the Board of Commissioners."  The letter did not contain a demand for specific monetary damages or include the name or address of Continental's attorney.  The attorney did give the Board a business card at the hearing.

The Cunninghams have never obtained a CUP for their bed and breakfast property.  After Linn County adopted its current zoning regulations, the Cunninghams changed the configuration of a room at their facility, built a retaining wall to increase the size of the yard and added a swimming pool.  On November 27, 2007, the Board wrote Continental a letter which confirmed that the zoning regulations did not require the Cunninghams to obtain a CUP.  Continental did not appeal that determination to the board of zoning appeals.

On April 3, 2006, Continental filed this suit against the Cunninghams and the Board.  Under

42 U.S.C. § 1983, Continental alleges that (1) the Board denied it procedural due process by attempting to amend the CUP through the Journal Entry, instead of complying with various Kansas statutes; (2) the Board violated its right to equal protection when it failed to make the Cunninghams obtain a CUP and attempted to modify its own CUP through the Journal Entry; and (3) the Board and the Cunninghams conspired to violate its constitutional rights to due process and equal protection.[1]

On March 2, 2007, the Court partially sustained defendants' motions to dismiss Continental's claims.  See Memorandum And Order (Doc. #44), Continental Coal, Inc. v. Cunningham, 511 F. Supp.2d 1065 (D. Kan. 2007).  Specifically, the Court dismissed Continental's claim that defendants denied it due process by failing to join it as a party to the Linn County lawsuit and its equal protection claim against the Cunninghams.  Id. at 1078-89.

On January 24, 2008, in the United States Bankruptcy Court for the District of Kansas, the Cunninghams filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  See No. 08-20109 (Bankr. D. Kan.).  Continental's damage claims against the Cunninghams were therefore automatically stayed.  On April 24, 2008, over the Board's objection, the bankruptcy court approved a stipulation between Continental, the Cunninghams and the bankruptcy trustee which provided that the stay did not affect Continental's claims against the Board or any claim that the orders of the Linn County District Court are invalid and unenforceable.

Continental filed a motion for partial summary judgment, seeking judgment on the issue of

---

[1]    Continental also asserts state law claims against all three defendants for tortious interference with business expectancies and abuse of process with respect to the Linn County lawsuit.  Finally, Continental asserts state law claims against the Cunninghams for abuse of process and malicious prosecution related to the KDHE proceedings and their administrative appeal of the initial KDHE decision to grant Continental a mining permit.

liability with respect to claims against the Board for denial of equal protection, tortious interference and abuse of process.  Continental argues that the uncontroverted facts establish liability on each of those claims as a matter of law.[2]

The Board seeks summary judgment on all Continental claims, arguing as follows: (1) the Continental claims are not ripe because the Board has never attempted to enforce the Journal Entry, (2) Continental has suffered no injury and lacks standing because the parties agree that the Journal Entry is not enforceable against Continental, and (3) Continental failed to exhaust administrative remedies to seek a variance or amendment to its CUP.  As to the due process claim, the Board argues that (1) Continental waived such a claim by failing to appear in the state court lawsuit which produced the Journal Entry, (2) Continental suffered no deprivation of a property interest because the Journal Entry is unenforceable and (3) Continental alleges only state law violations, which cannot support a claim under Section 1983.  As to the equal protection claim that it did not require

---

[2]    More specifically, Continental claims that it is entitled to judgment as a matter of law on its equal protection claim because (1) it is similarly situated to all other CUP holders, (2) no rational basis allows the Board to disregard its zoning and eminent domain laws to the private benefit of the Cunninghams, and (3) the Board refused to require the Cunninghams' neighboring business to obtain a CUP.  As explained below, as to the equal protection claim that the Board treated Continental differently than the Cunninghams, Continental has not demonstrated a genuine issue of material fact whether the Cunninghams needed a CUP under the zoning regulations or whether the Cunninghams are similarly situated to Continental.  As to the equal protection claim that the Board treated Continental differently than all other CUP-holders, such a claim fails because the Journal Entry is not enforceable against Continental, Continental has not shown that it is similarly situated to all other CUP-holders and Continental cannot show that the Board's stated reason for its conduct (to settle the Cunningham lawsuit against it) was irrational.

Continental also seeks summary judgment (1) on its tortious interference claim, on the ground that it lost contracts because the Board threatened to enforce more restrictive operating hours than those allowed by the original CUP and (2) on its abuse of process claim, on the ground that the Board knew that the Journal Entry was invalid but it nevertheless used it to threaten Continental and curtail its business operations.  As explained below, Continental did not substantially comply with K.S.A. § 12-105b(d) and the Court therefore dismisses Continental's state law tort claims.

the Cunninghams to obtain a CUP, the Board seeks summary judgment because (1) Continental

suffered no injury and therefore lacks standing, (2) the claim is not ripe because Continental did not

appeal the Board's determination that the Cunninghams did not need a CUP, and (3) the

Cunninghams are not similarly situated to Continental and did not need a CUP, and the Board did

not act with an improper purpose.  As to the equal protection claim about the issuance of the Journal

Entry, the Board seeks summary judgment because other CUP-holders in the county are not

similarly situated and the Board did not act irrationally.  The Board also argues that as a matter of

law, the conspiracy claim fails because no underlying constitutional violation occurred and the

record lacks evidence of an agreement between the Board and the Cunninghams.  Finally, the Board

argues that the state law claims are legally deficient on the merits and Continental did not comply

with the notice requirement of K.S.A. § 12-105b(d).[3]

The Court first addresses the Board's motion and concludes that the Board is entitled to

summary judgment or dismissal with respect to all claims.[4]

<u>**Analysis**</u>

**I.**      **Procedural Due Process Claim**

In this suit, Continental originally claimed that defendants denied it procedural due process

by failing to join it as a party in the Linn County lawsuit in which the state court entered the Journal

Entry relating to its CUP.  As more fully set forth in the Court's prior order, the Court dismissed that

---

[3]      The Board also argues that as a matter of law, Continental cannot recover punitive damages against the county.

[4]      In light of the Court's rulings below, which dispose of Continental's claims against the Board, the Court declines to address each issue raised by the Board.  The Court has carefully reviewed Continental's motion for partial summary judgment and finds that it is without merit.

claim on the basis that Continental had effectively waived any such claim. See id. at 1081. The Court noted that Continental had not exercised its right to intervene for all purposes in the state court suit, and in fact had strategically decided to oppose such intervention. The Court held that by virtue of that decision, Continental "may argue that it is not bound by the judgment in the lawsuit, but it cannot assert that it did not have notice and a meaningful opportunity to be heard in the case." Id. at 1082. After that order, Continental amended its due process claim against the Board to allege that the Board violated its right to procedural due process by attempting to amend its CUP through the Journal Entry of March 17, 2006, without complying with applicable zoning and planning statutes, K.S.A. §§ 12-715b et seq.; Kansas open meetings statutes, K.S.A. §§ 19-201 et seq.; Kansas eminent domain statutes, K.S.A. §§ 26-501 et seq.; and the Linn County Zoning Regulations.[5]

Continental asserts that it had a property interest in the terms of the CUP and that the Board did not give it adequate notice or opportunity to be heard when it agreed to a Journal Entry in a "meaningless" lawsuit which did not impact the terms of the CUP and was in fact unenforceable, instead of proceeding under other state statutes. Continental's Response (Doc. #176) at 43. Agreeing that the Journal Entry is unenforceable, the Board seeks summary judgment because, as a matter of law, Continental cannot show an actual deprivation of rights under the CUP.

The requirements of procedural due process apply only to the deprivation of certain property or liberty interests. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). Here, Continental only alleges that it had a property interest in the terms of its CUP. See Pretrial Order

---

[5]    Continental argued such violations in opposition to defendants' motions to dismiss, but the Court declined to address them because the original complaint only alleged a due process violation based on failure to join Continental in the state court suit. See Continental Coal, Inc., 511 F. Supp.2d at 1078 n.4. Continental has now recast its due process claim to encompass those violations of state and county law.

(Doc. #147) at 27 (property interest in CUP); <u>Continental's Response</u> (Doc. #176) at 40 (property interest in terms of CUP); <u>id.</u> at 41 (Board ignored procedural requirements for amending CUP); <u>id.</u> at 42 (Board attempted to use private lawsuit as substitute process for amending CUP and depriving Continental of rights under CUP). To state a claim under Section 1983, plaintiff must show that the state actually deprived it of property – in this case its right to operate under the terms of the original CUP. <u>See</u> <u>Williams v. DesLauriers</u>, 38 Kan. App.2d 629, 637, 172 P.3d 42, 47 (2007). Here, Continental at most can show that the Board unsuccessfully attempted to alter the terms of its CUP. <u>See</u> <u>Continental's Response</u> (Doc. #176) at 38-40 (Board attempted to deprive plaintiff of property rights without procedural due process). Section 1983, however, does not recognize such claims. <u>See</u> <u>Dixon v. City of Lawton</u>, 898 F.2d 1443, 1449 (10th Cir. 1990) (actual deprivation required for conspiracy to deprive rights under Section 1983); <u>Hale v. Townley</u>, 45 F.3d 914, 920 (5th Cir. 1995); <u>Mozzochi v. Borden</u>, 959 F.2d 1174, 1180 (2d Cir. 1992) (success of attempt to deprive one of constitutional rights necessary to show violation); <u>Andree v. Ashland County</u>, 818 F.2d 1306, 1311 (7th Cir. 1987) (usually mere attempt to deprive one of constitutional rights not actionable); <u>Dooley v. Reiss</u>, 736 F.2d 1392, 1394-95 (9th Cir. 1984) (unsuccessful attempt not actionable); <u>Lyddy v. Bridgeport Bd. of Educ.</u>, No. 06-CV-1420(AHN), 2007 WL 2697452, at *5 (D. Conn. Sept. 11, 2007) (no recovery under Section 1983 for attempted constitutional violation). The Court therefore sustains the Board's motion for summary judgment on this claim.[6]

---

[6]     Continental argues that the Board ignored established procedures for amending a CUP under state and county law, but it concedes that the Board only attempted to amend the CUP. As explained above, the Board did not actually amend the CUP, so failure to follow established procedures did not deprive Continental of a property interest.

Furthermore, even if plaintiff's current claim could be read to allege that the Journal Entry altered its rights under the CUP, plaintiff received adequate notice and opportunity to participate in
(continued...)

## II.      Equal Protection Claims

### A.      Claim Based On Cunninghams' Lack Of CUP

Continental claims that the Board violated its rights under the Equal Protection Clause by failing to require the Cunninghams to obtain a CUP for their bed and breakfast facility.  Continental argues that it is similarly situated to the Cunninghams because both businesses represent non-conforming uses under Linn County zoning regulations, and the Board treated it differently and thus discriminated against it by allowing the Cunninghams to operate without a CUP.  The Board is entitled to summary judgment on this claim.

#### 1.      Cunninghams Were Not Required To Obtain A CUP

Continental claims that pursuant to Section 10.04 of the Linn County Zoning Regulations ("LCZR"), the Cunninghams were required to obtain a CUP after changes to their business and the Board denied it equal protection by failing to require them to obtain one.  Section 10.04 applies only to "[p]roperties with land uses operating under an existing Conditional Use approved prior to the adopting of these Regulations."  LCZR § 10.04.  It is undisputed that the Cunninghams did not have a CUP before Linn County adopted the LCZR.  Thus, Section 10.04 does not apply to the Cunninghams.  Section 11.09 determines whether the Cunninghams needed a CUP, and it provides that a lawful use of land prior to the adoption of the LCZR that would be non-conforming under the LCZR may nonetheless continue in the absence of "structural alterations" to the property.  LCZR § 11.09.  "Structural alterations" are defined as "[a]ny change in the supporting members of a building, such as, bearing walls or partitions, column, beams or girders, or any

---

⁶(...continued)
the Linn County lawsuit.  See Continental Coal, 511 F. Supp.2d at 1081-84.

complete rebuilding of the roof or the exterior walls."  LCZR § 2.03(96).

Continental has cited evidence that the Cunninghams changed the configuration of a room and built a retaining wall to increase the size of the yard at their property.  Continental has not cited any evidence, however, that they undertook structural changes to the supporting members of their building.  Therefore Continental has not demonstrated a genuine issue of material fact whether the Cunninghams needed a CUP under the zoning regulations.

Continental has not challenged the constitutionality of the zoning regulations which allow prior non-conforming uses to continue after the adoption of the regulations.  At any rate, the Supreme Court has held that the Equal Protection Clause does not "forbid statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time."  Califano v. Webster, 430 U.S. 313, 321 (1977) (quoting Sperry & Hutchinson Co. v. Rhodes, 220 U.S. 502, 505 (1911)).  Therefore, Continental's claim that the Board denied it equal protection by failing to require the Cunninghams to obtain a CUP must fail as a matter of law.

2.      Cunninghams Are Not Similarly Situated

Even if the zoning regulations required the Cunninghams to obtain a CUP, Continental's claim that the Board denied it equal protection by enforcing those regulations differently with respect to it and the Cunninghams would fail as a matter law for an alternative reason – Continental and the Cunninghams are not similarly situated.  Continental describes this claim as a "class-of-one" claim under Village of Willowbrook v. Olech, 528 U.S. 562 (2000).  In Olech, the Supreme Court held that a plaintiff need not allege that it was part of a suspect class in order to state an equal protection claim.  Jennings v. City of Stillwater, 383 F.3d 1199, 1210 (10th Cir. 2004).  The Tenth Circuit has described a class-of-one claim as follows:

In the paradigmatic class-of-one case, a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive.

The paradigmatic "class of one" case, more sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen.

Jicarilla Apache Nation v. Rio Arriba County, 440 F.3d 1202, 1209 (10th Cir. 2006) (citation omitted).  The relevant inquiry in considering such a claim is (1) whether defendant advanced grounds for its action that are not irrational and wholly arbitrary, and (2) whether the compared persons were similarly situated in every material respect.  Id. at 1210.

The Tenth Circuit has applied a narrow standard for class-of-one actions:

In the wake of Olech, the lower courts have struggled to define the contours of class-of-one cases.  All have recognized that, unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors.  It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation.  It would become the task of federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review.  This would constitute the federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system.

Jennings, 383 F.3d at 1210-11 (footnote omitted); see also Jicarillo, 440 F.3d at 1209 (most circuits, including Tenth, have proceeded cautiously in applying class-of-one theory).  Expanding on that warning, the Tenth Circuit has noted that "[s]uch a pervasive threat of federal litigation [as noted in Jennings] could straightjacket local governments that have neither the capacity to document the reasoning behind every decision nor the means to withstand an onslaught of lawsuits." Jicarillo, 440

-14-

F.3d at 1209.

Accordingly, the Tenth Circuit has concluded that the requirement that the plaintiff show that similarly-situated persons were treated differently "is especially important in class-of-one cases." Jennings, 383 F.3d at 1213.  At the summary judgment stage, the plaintiff must demonstrate similarity in all material respects.  Jicarillo, 440 F.3d at 1212.

> [W]hen the class consists of one person or entity, it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable.  Accordingly, courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases.

Id. at 1213; see also Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005) (cited with approval in Jicarillo) (class-of-one plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy").

In the present case, Continental argues that it is similarly situated to the Cunninghams because both businesses represent non-conforming uses under the zoning regulations.  Such evidence, however, does not satisfy the strict burden imposed by the Tenth Circuit.  A mining operation differs from a bed and breakfast in a number of material ways — the need for blasting, heavy machinery and truck traffic, among others.  The zoning regulations contain special provisions for mining operations and operations that could have environmental impacts.  Continental has not demonstrated a genuine issue of material fact whether reasonable officials would treat mining operations and bed and breakfast facilities the same with respect to their need for a CUP and a legitimate need to regulate those uses.  Therefore, Continental cannot maintain an equal protection claim based on a "class-of-one" theory, and the Board is entitled to summary judgment on this claim.

-15-

B.      Claim Based On State Court Journal Entry

Continental claims that the Board violated its right to equal protection by attempting to modify its CUP through the Journal Entry in the Linn County lawsuit.  Continental argues that in doing so, the Board treated it differently from all other CUP-holders in the county, whose CUPs have only been modified in accordance with particular statutory and regulatory procedures. Continental again invokes the "class-of-one" theory to support this claim, and this claim again fails as a matter of law.

As noted above, both Continental and the Board agree that the Journal Entry is not enforceable against Continental.  Thus, any attempt to modify the CUP failed and the Journal Entry had no legal effect.  Continental has provided no authority for a claim that the Board denied it equal protection when it tried (but failed) to treat it differently from others.

Continental's claim fails for other reasons as well.  First, under the Tenth Circuit's strict standard, Continental has not shown that it is similarly situated in all material respects to all other CUP-holders in the county.  See Jicarilla, 440 F.3d at 1210 (plaintiff must show compared persons similarly situated in every material respect).  In addition, Continental cannot satisfy the requirement that the Board's stated reason for its conduct (to settle the Cunningham lawsuit) was irrational and wholly arbitrary.  See id. (plaintiff must show stated grounds irrational and wholly arbitrary).  The sincerity of the Board's reason is irrelevant; Continental must show that the Board action was *objectively* irrational and abusive.  See id. at 1211.  In opposition to summary judgment, Continental's only response is that by agreeing with the Cunninghams with respect to the Journal Entry, the Board was trying to favor the Cunninghams over Continental.  Such motive, even if true, does not make the Board's decision to agree to the Journal Entry irrational.  Continental has not

-16-

shown that the Board's ineffectual attempt to modify Continental's CUP through the Journal Entry, in order to settle the Cunningham lawsuit, is objectively irrational. Therefore the Board is entitled to summary judgment on this claim.

### III.     Conspiracy Claim Under Section 1983

In its final claim against the Board under 42 U.S.C. § 1983, Continental alleges that the Board conspired with the Cunninghams to violate its rights under the Due Process Clause and the Equal Protection Clause of the United States Constitution. Because Continental's underlying constitutional claims cannot stand, the Court awards summary judgment to the Board on the federal conspiracy claim. See Dixon, 898 F.2d at 1449.

### IV.     Kansas State Law Claims

Continental asserts state law claims against the Board for tortious interference with business expectancies and abuse of process. The Board argues that the Court lacks jurisdiction to hear such claims because Continental did not comply with the notice requirements of K.S.A. § 12-105b(d). The Court agrees.

K.S.A. § 12-105b(d) provides in pertinent part as follows:

Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim.

"Municipality" is defined to include counties and their boards for purposes of this statute. See

K.S.A. § 12-105a(a).  The Kansas Supreme Court has made clear that a claim against a county cannot survive unless plaintiff complies with Section 12-105b(d):

> It is a longstanding rule that filing a proper notice of a claim is a prerequisite to filing an action with the district court against a county or other municipality.  Failure to provide the statutory notice of a claim in accordance with [Section 12-105b] precludes relief.  Thus, [Section 12-105b] is jurisdictional . . . .  If the statutory requirements are not met, the court cannot acquire jurisdiction over the municipality.

Myers v. Bd. of County Comm'rs of Jackson County, 280 Kan. 869, 876-77, 127 P.3d 319, 325 (2006) (citations omitted).

The statute expressly allows for "substantial compliance" with its provisions and requirements.  K.S.A. § 12-105b(d).  The Kansas Supreme Court has defined "substantial compliance" to mean "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute."  Myers, 280 Kan. at 874, 127 P.3d at 323 (quoting Orr v. Heiman, 270 Kan. 109, 113, 12 P.3d 387 (2000)).  The objective of the statute is to "advise the proper municipality of the time and place of the injury and give the municipality an opportunity to ascertain the character and extent of the injury suffered."  Id. (quoting Bell v. Kansas City, Kan. Housing Auth., 268 Kan. 208, 210, 922 P.2d 1233 (1999)).  The Kansas Court of Appeals has elaborated on the requirement of substantial compliance as follows:

> In order to substantially comply with the notice requirements of K.S.A. [§ 12-105b(d)], a plaintiff must attempt to supply the information required by each of the five elements of the statute if relevant to the facts of the case; omission of one or more relevant elements makes the notice fatally insufficient.

Tucking v. Bd. of Comm'rs of Jefferson County, 14 Kan. App.2d 442, 442 syl. ¶ 3, 796 P.2d 1055, 1056 (1990).  Substantial compliance does not occur if one element is completely missing from the written notice.  Id. at 446, 796 P.2d at 1058; see also Carney v. City of Shawnee, 38 F. Supp.2d 905, 914 (D. Kan. 1999) (applying Tucking standard).

-18-

To show compliance with Section 12-105b(d), Continental cites a letter to the Board dated March 27, 2006, seven days before Continental filed the present suit. In that letter, Continental complained that the Journal Entry "came about" without due process to Continental and amounted to an illegal taking and an abuse of process, and demanded that the Board appeal the Journal Entry. Continental stated that if the Board did not appeal, "Continental Coal will have no choice but to reserve all of its rights and claims for damages and relief arising from the tortious and unlawful conduct and actions of the Cunninghams and the Board of Commissioners."

As a matter of law, this letter did not substantially comply with Section 12-105b(d). Most significantly, it did not contain any statement of the amount of monetary damages which Continental now requests from the Board, or adequately set forth the factual basis for its claims or the nature and extent of its injuries. The letter referred to abuse of process and generally complained about the Journal Entry, but it did not refer to any interference with Continental business relations or note any injury to its business or its business relationships. Finally, the letter omitted the name and address of Continental's attorneys.

Continental argues that the letter was sufficient because at the time of the letter, Continental was seeking an appeal of the Journal Entry and not monetary damages. A few days later, however, Continental filed its original complaint in this action seeking compensatory and punitive damages, including attorney fees, lost revenues, devaluation of assets and permits and other expenses and fees. Under K.S.A. § 12-105b(d), any tort claim by Continental for damages under Kansas state law must follow a written notice to the Board of a claim for such damages and an opportunity (up to 120 days) for the Board to respond to the claim. Continental has cited no authority for its novel argument that a notice need only include those claims which are contemplated at the time of the notice, and not

claims which are actually asserted in court a few days later.  Such an interpretation  would essentially abrogate the statute's express requirement of a written notice that includes a statement of damages sought and an adequate period of time for the Board to consider such claim.  Absent factual information regarding the injury and damages that Continental allegedly suffered, the Board had no opportunity to "ascertain the character and extent of the injury suffered" or to adequately determine its possible liability, and the letter thus failed to assure "every reasonable objective of the statute."  See Myers, 280 Kan. at 874, 127 P.3d at 323.

The Court rejects Continental's argument that it substantially complied with the first requirement of the statute (notice of the name and address of the claimant and the claimant's attorney) because its attorney gave the Board a business card at the hearing at which Continental delivered the letter.  Actual notice of required information is not sufficient; rather, the information must be stated in the written notice.  See Tucking, 14 Kan. App.2d at 448, 796 P.2d at 1059 (rejecting argument that required elements need not be stated in written notice).

As a matter of law, Continental did not substantially comply with K.S.A. § 12-105b(d).  Accordingly, the Court cannot acquire jurisdiction with respect to Continental's state law tort claims against the Board, and the Court dismisses those claims.

**V.     Remaining Claims, Order To Show Cause And Continuance Of The Trial**

In light of the instant rulings, the only remaining claims against the Cunninghams are for conspiracy under 42 U.S.C. § 1983 and tortious interference, abuse of process and malicious prosecution under state law.[7]  As noted above, the bankruptcy court has lifted the automatic stay

_____

[7]     Because Continental has not established an underlying due process or equal protection violation, it would appear that Continental cannot maintain a federal conspiracy claim
(continued...)

with respect to Continental's declaratory challenge to the validity of orders of the Linn County District Court. The basis for such a claim is no longer clear, however, given the Court's disposition of the claims against the Board and the Board's agreement that the state court orders cannot be enforced against Continental. Accordingly, the Court orders Continental and the Cunninghams to show cause in writing by **May 23, 2008**, why any claim remains for trial in this case. The trial now set for May 20, 2008 is hereby continued until further order of the Court.

**IT IS THEREFORE ORDERED** that the <u>Motion for Summary Judgment of Defendant Board of County Commissioners of Linn County, Kansas</u> (Doc. #151) filed January 18, 2008 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that <u>Continental Coal, Inc.'s Motion for Partial Summary Judgment</u> (Doc. #154) filed January 18, 2008 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the following claims remain in this case: Continental's claims against the Cunninghams for conspiracy under 42 U.S.C. § 1983 and tortious interference, abuse of process and malicious prosecution under Kansas law.

**IT IS FURTHER ORDERED** that Continental and the Cunninghams shall show cause in writing by **May 23, 2008**, why any claim remains for trial in this case.

**IT IS FURTHER ORDERED** that the trial now set for May 20, 2008 is hereby continued until further order of the Court.

---

[7](...continued)

against the Cunninghams under 42 U.S.C. § 1983. <u>See</u> <u>supra</u>, Part III. The Court cannot dispose of that claim, however, because the Cunninghams have not filed a motion for summary judgment and the automatic stay in bankruptcy precludes the Court from adjudicating that issue.

Dated this 15th day of May, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Court